20, 32, 36. Titichamale v. Garland. Good morning. May it please the court, my name is Paul O'Dwyer and I represent the petitioner Jose Titichamale in this case. So Mr. Titichamale is a citizen of Guatemala who came to the U.S. fleeing gang-related violence on or about 2007 or 2008. The record is not completely clear as to his date of entry but it's also not relevant particularly here. So in Guatemala he had lived in a sort of mixed indigenous community and he was consistently targeted for harm while he lived there. He came here when he was 17 and he was targeted for harm arising out of gang-related violence. He was targeted by the MS-13 gang because number one they wanted to recruit him and force him to join and then he was later targeted by a vigilante group who also worked, operated as the authorities in his town because they actually was a member of MS-13. He was then targeted by another group called the Barrio 18 because they believed he was a member of the MS-13 and then in order to avoid very very severe harm at the hands of a vigilante group he offered up the names of MS-13 members whom he knew to the authorities and then he was targeted by MS-13 again because he had given information about them to the authorities and the harm that he had to flee his town they tried to burn him alive. The police were there, they were unable to protect him, they were unable to intervene and he fled and he came to the U.S. On the particular social group of people who are perceived I guess to be MS-13 members that's one of your arguments. Yes. How was that exhausted before the BIA? There were five groups that were listed and they're pretty, you know, specifically articulated and this was not one of them. Well, Your Honor, I believed that the, so the, it was not one of the listed particular social groups that was given to the board, however, the immigration, or to the immigration judge rather, but the immigration judge reached the issue. She found that he had been, that he had suffered past persecution on account of his perceived gang membership and that's page seven of the immigration judge's decision and then, however, she found that the government had rebutted the presumption of future persecution arising from that persecution because he had satisfied the demands of community leaders persecuting him. So by addressing the factual underpinning of the particular social group description, that's sufficient to exhaust the argument? Yes, because she implicitly found that he was seeking persecution, that he was seeking protection based on his membership in that particular social group because she found he had been persecuted on account of it, that he had suffered past persecution. And then on appeal, the Board of Immigration Appeals said no, that was on appeal. She argued to the board that the judge should not have found that the presumption of past persecution had been rebutted. So there was no need for her, for his respondents, I'm sorry, for petitioners, council at the time to have argued that particular social group to the board because the immigration judge had already found it and there was no need for her. The issue just didn't present itself. Even if she hadn't raised it to the immigration judge, the immigration judge had made a finding based on it. And so in that case, it was exhausted because the court had raised it itself. The, with regard to the respondents' criminal, petitioner's criminal conviction. So petitioner was convicted of criminal possession of a controlled substance in California under California Health and Safety Act Section 11377A. And the petitioner was convicted of possession of a controlled substance. And the, he applied for cancellation of removal as well as for asylum and related relief when he was in removal proceedings. And the court found that he was not eligible for it because this conviction made him ineligible. But without applying a categorical or mixed categorical approach. So the Ninth Circuit found in a case, Rodriguez-Gamboa, that it's not possible to make geometric isomers of math. So if that's true as a factual matter, then wouldn't it be, if it's just a theoretical categorical mismatch, they would actually be a match, the federal and state schedules, and so it wouldn't have to apply the analysis. Is that? So Rodriguez-Gamboa held that they applied the realistic probability test to find that there was no possibility of a prosecution for possession of geometric isomers of methamphetamine. But this court has consistently refused to apply or prohibited the application of the realistic probability test in cases. My understanding is that for math in particular, a geometric isomer is not a chemically possible thing, and I could be wrong about that, and it may be different for other substances. But if that's true, then why would you do the categorical approach, or why wouldn't the categorical approach lead you to conclude that it's a match? Well, because the, so I think the background to that case is interesting. So the, that was based on a appeal from a district court decision, and in the district court case, I believe it was a sentencing case, but the government had presented expert witnesses who said there is no such thing as a geometric isomer of methamphetamine, and the defense did not present any evidence to rebut that. They examined the government witnesses, but they didn't present any corresponding evidence, and so it was essentially unrebutted. And on appeal, the Court of Appeals upheld the district court finding that there was, that there was no such thing as a geometric isomer. There was a, there has been two cases which very recently came to my attention. I didn't have an opportunity to put it in a Rule 28J letter, but I would like to submit it afterwards. There was a recent decision from an unpublished Board of Immigration Appeals decision from November of this year, which I just received yesterday from a colleague, which said that, which number one said that the realistic probability test does apply in this circumstance, and it precludes the application of the, of the realistic probability test as was applied in Rodriguez-Gamboa to determine it. And that case was almost the flip version of what happened in Rodriguez-Gamboa. In this unpublished Board case, it was the defendant, the respondent in the removal proceedings who had presented expert evidence stating that in fact there is such a thing as a geometric isomer of methamphetamine, and that therefore the holding in Rodriguez- Gamboa should not apply. And the Board of Immigration Appeals said, well, because Rodriguez-Gamboa used the realistic probability test or applied it in this case, and the case arose in the Tenth Circuit, which like this circuit does not apply the realistic probability testing cases involving drug schedules, it said that it would not allow, it would find that there was not a categorical match and it would find that the federal statute was overbroad. However, there's also a recent Southern District of California decision, which I also just received very recently, as I said, which found that even regardless of the isomer issue, that there are also methamphetamine analogs of methamphetamine, and that the California analog, methamphetamine analogs are broader, if you like, than the federal statute. And so the statute is overbroad because of the methamphetamine analogs, even if not because of the geometric isomers. So if you want to remand so the BIA can take a look at this. Yes, yes, we think this is an issue for the Board to consider in the first instance. Thank you, Counsel. Thank you. Good morning, may it please the Court. Jonathan Needle, Department of Justice, on behalf of the respondents. The petitioner sought asylum and withholding of removal based on his membership in several social groups, four of which were clearly delineated in his pre-hearing brief to the Immigration Court. And then at the very beginning of the merits hearing, he supplemented that list to include another social group. So there were a total of five groups and none of them included what the petitioner is now asserting, the group consisting of imputed gang members. And what the agency and what this Court has emphasized is that the particular social group determination is highly fact specific. It requires a determination of whether the society in question recognizes the group as distinct. And to that end, there are immutability, particularity, social distinction requirements. Well, your friend said that the IJ, you know, made a ruling and looked at the facts that pertain to his perception as a gang member and that's sufficient to exhaust. Why isn't that enough? It may be the case that the petitioner could have raised that issue to the Board. Even though it wasn't one of the five categories listed in the briefing below, the facts were there and the IJ considered them. Why isn't that enough? Well, this Court primarily reviews the Board's decision, which specifically goes through the analysis. Well, the Board's decision, I think, also references the IJ's findings on that, too. I don't believe they cite to the IJ's apparent determination that as a matter of law, the social group was not cognizable. There was passing reference to, I guess, the motivation of the individuals in targeting the petitioner, the community leaders as targeting the petitioner because they believed that he was a gang member based on the way he presented the petitioner's testimony as to his belief. There was no separate analysis of the immutability, particularity, and social distinction. Right, but if the Board is considering those facts explicitly, even if not sort of in the context of saying social group of perceived gang member, I mean, the concern with exhaustion preservation issues is that the Court that's addressing it should have had an opportunity to look at an issue before an appellate court comes in and says, we're going to weigh on this. And so here, the fact that the Court's addressing it, even if they're not labeling it as a social group, they're addressing those facts, that's not sufficient? Right, and the issue here is that the petitioner in his opening brief goes through the specific elements of the particular social group, citing two portions of the record that support his argument. So it's essentially asking the Court to issue factual findings as to the cognizability of the group. And of course, that's not the Court's role at this stage of the proceedings. He could have asked the agency to do that in the first instance, but he did not. He did not separately identify this group as a basis for relief. The record is very clear as to the group membership that he was asserting. But the BIA specifically says that the evidence demonstrates that the reason he was targeted by the vigilante group was on account of their belief that he was involved in criminal gang activity. Again, we would submit that that relates more to the nexus requirement. The nexus requirement doesn't really come into play because there was no separate analysis of cognizability. But if we're talking about a waiver issue, isn't what matters whether this was raised? You're saying, well, he didn't expressly list it, but there's no doubt based on the IJs and the BIA's decision that this was on the table. Again, we would emphasize that the agency's reference to this particular issue was rather superficial because it was not identified as a basis for relief. Would it make more sense then to remand for the agency to do that particularization analysis? We would argue that under this Court's precedent he did not raise the issue distinctly enough before the agency and that the statutory exhaustion requirement comes into play. There's a citation on page 26 of your brief where you cite a Second Circuit case. And you say it says, whereas here an applicant delineates a social group for the first time on appeal, the IJ will not have had an opportunity to make relevant factual findings, which we cannot do in the first instance on appeal. And I looked because that sounded like an important proposition. And that quote isn't in that case. It appears to be from a BIA case. Can you speak to that? I believe that was an erroneous citation. It actually related to the next case that was cited in the next line. Are you aware of that or are you just realizing that now as I point it out to you? I looked into the issue, I believe, yesterday and I noticed that it was not, it was more the board's decision. That struck me as a material mistake and the type of thing that really should not be thrown out there. We're bound by Second Circuit precedent. This is not that. And what you said about it is arguably misleading. Understood, Your Honor. And we do apologize for that. Now, as to the criminal issue, those cases that the Petitioner's Council was referencing, the unpublished board decision and the Southern District of California decision, the board decision was brought to my attention this morning. As Petitioner's Council mentioned, it arose out of the Tenth Circuit. There is still Ninth Circuit precedent, as Your Honor mentioned, in the Rodriguez-Gamboa case, which found that state and federal definitions of methamphetamine are a categorical match. Rodriguez-Gamboa has been affirmed in multiple unpublished decisions issued by the Ninth Circuit, which are on the issue. And as far as realistic probability... So why shouldn't we remand the BIA to try to at least take a crack at reconciling all this in the first instance? Right. And as we argue in our brief, the question of the divisibility of the statute, whether it's a categorical match, is one that's purely a question. It is a legal question, but we're hearing authority now for the first time in argument, and it's something that we don't have a decision from the BIA on. And it seems like the kind of thing that we would typically remand on. I understand, but if the court believes that a remand is appropriate on that specific issue, then we would ask that the court make a threshold ruling as to the divisibility of the statute. That's what the board had initially sidestepped, not sidestepped, but overlooked, before applying the modified categorical approach. There needed to be a divisibility analysis. And as we cite, as we mentioned in our brief, there is highly persuasive Ninth Circuit case law indicating that the statute of conviction is divisible. So that would be a first step towards looking at the specific substance at issue, which is referenced only in the conviction documents. So again, it would be appropriate for the court to make that threshold determination at the very least prior to any remand to consider the more specific question of the categorical definition of methamphetamine. But I do want to emphasize that in the Rodriguez-Gamboa decision, the Ninth Circuit held that as a matter of law, the state and federal definitions were a categorical match. There was a discussion of realistic probability, but the actual holding was that there was a factual impossibility that an individual would be prosecuted for possession of the geometric isomers of methamphetamine. So because of the factual impossibility, that meant that as a matter of law, there was a categorical match. And as Petitioner's Counsel mentioned, that was a finding that was reached by the district court following a three-day evidentiary hearing. I believe it was three days, I'm not sure. But of course, this goes into matters of organic chemistry. Petitioner's Counsel mentioned that there was an unpublished board decision that I looked at that contains terminology that I'm not able to discuss, I'm not qualified to discuss. But again, it arises out of the Tenth Circuit and it is an unpublished board decision. Okay. Thank you, Counsel. Thank you. So just with regard to the issue of remand, with regard to the criminal conviction. So I don't agree that the court should first conduct its own divisibility analysis. This court should not conduct a divisibility analysis and then send it back to the board for further work. I think that if the case is being remanded, it should be remanded to the board and the board has always, that's one of the jobs of the board in these cases, is to do a divisibility analysis in the first instance. And particularly when it involves cases from different jurisdictions and asking this court to weigh in and make a ruling in the first instance on whether or not the California statute is divisible and then remand it, I think would usurp the role of the board as the role of the agency. Doesn't your client need it to be divisible for the next step to occur in the process? If it's not divisible then there's no more steps in the process. But you don't want us to find it's divisible? Just to be clear, you would prefer that we remand and ask the BIA to decide whether or not the statute is divisible and therefore we remand for an assessment of the need for the application of the categorical or modified categorical approach? No, I mean I would like the court to find that it's not divisible. But it's just my position that if the case is being remanded then it should be remanded for  discussion. Finally, just with regard to the issue of the various social groups and I did not discuss this in my initial presentation, but we also raised the valid particular social group of people who cooperated with the authorities against gangs. That was raised by a petitioner to the agency. And the board found that it was not a valid particular social group. In our argument here, the respondents only response to that is that we haven't raised the issue of nexus to this court. But as I've argued in my brief, it was unnecessary to do so because the board already found that there was a nexus. The board already found that my client had been harmed because of his cooperation with the authorities. They just found the cooperators with the authority was not a valid particular social group. And as I've argued in my brief, it is a valid particular social group and there was no need and the government has not disputed that it is a valid particular social group. And as I've explained, the issue of nexus was already decided.